UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Daniel and Sarah Rivka Goldfarb, Mechel and
Malky Greenwald, Yechial Maier and
Ester Laufer, Fishel and Tili Roth, Chesky
And Ruchel Litzman, Ari and Ruth Parness,
Sol and Sarah Schlesinger, Herman and Harriett
Friedman, Jacob Gestetner, Jacob Grossman, and
David Braun,

      Petitioners

v.

Town of Ramapo, Town Board of the Town of
Ramapo, Christopher P. St. Lawrence, Yitzchak
Ullman, as Town Supervisor of the Town of
Ramapo, Moses Friedman, Upstate Construction
of Rockland County, Inc., Rose Harvey, as
Commissioner, New York State Office of Parks,
Recreation and Historic Preservation, and Michael
T. Reynolds as Acting Director, National Park
Service.

      Respondents.
------------------------------------------------------------x

CASE NO.:

COMPLAINT FOR INJUNCTIVE
RELIEF and DECLARATORY
JUDGMENT

## INTRODUCTION

1.    This action challenges the determination of the Town of Ramapo located in Rockland County, New York, to sell a parcel of parkland. The parkland is more specifically identified as 24 Grosser Lane, Monsey, New York, on the municipal tax map as 49.15-2-29 (the "Subject Parcel"). The sale, if consummated, would be in violation of The Land and Water Conservation Fund Act of 1965. That parkland had been developed with a grant provided under the L&WCF applied for by the Town of Ramapo as sponsor through the State of New York, acting by and through its Office of Parks and Recreation Department. As a result of that application, Ramapo received a grant of $297,600.00 from the Bureau of Outdoor Recreation,

1

United States Department of Interior. The Township of Ramapo is attempting to sell the Subject Parcel under the guise of designating the property as "surplus property." The sale of such public parkland without federal and/or state approval is in violation of the L&WCF and New York's Public Trust Doctrine.

## JURISDICTION AND VENUE

2. Plaintiffs bring this action pursuant to the Land and Water Conservation Fund Act of 1965, as amended, 16 U.S.C. §460l -4 – 460l -11 (now codified at 54 U.S.C. §§200301-200310) ("L&WCF"), and its implementing regulations, 36 C.F.R. part 59. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question) and may issue declaratory judgment and grant further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the plaintiffs and two of the defendants reside in this District and the property which is the subject of this action is located in this District.

4. Supplemental jurisdiction over Plaintiffs' state common law cause of action against the Town of Ramapo (New York's Public Trust Doctrine) is proper pursuant to 28 U.S.C. § 1376(a).

## PARTIES

5. Plaintiffs Daniel and Sarah Rivka Goldfarb, Mechel and Malky Greenwald, Yechial Maier and Ester Laufer, Fishel and Tili Roth, Chesky and Ruchel Litzman, Ari and Ruth Parness, Sol and Sarah Schlesinger, Herman and Harriet Friedman, Jacob Gestetner, and Jacob Grossman, have been at all times hereinafter mentioned residents of Grosser Lane, Monsey, New York and/or the surrounding neighborhood and are persons who have used and enjoyed the

Subject Parcel as parkland, and enjoy the recreation, scenic vistas and buffer from developed areas, provided by the Subject Parcel.

6.  At all times hereinafter mentioned, Defendant, the Town of Ramapo was a duly organized town located in the County of Rockland, New York and is the record owner of the Subject Parcel and was the sponsor of project number 36-00236 (Object ID 26689), a project under the L&WCF for the development of Viola Park, a public park within which the Subject Parcel is located.

7.  At all times hereinafter mentioned, Defendant the Town Board of the Town of Ramapo (the "Town Board") was the duly constituted governing body of the Town of Ramapo and, defendant Christopher P. St. Lawrence ("St Lawrence") was the Town Supervisor and a member of the Town Board. He resigned after having been convicted in a criminal proceeding in this Court. The current Acting Supervisor is Yitzchak Ullman (all are sometimes collectively referred to as, the "Town").

8.  Defendant Moses Friedman ("Friedman") was the successful bidder for the purchase of the Subject Parcel and entered into a Contract of Sale with the Town of Ramapo on behalf of his company, Upstate Construction of Rockland County, Inc. (Friedman and Upstate are sometimes collectively referred to as "Upstate"), for the purchase of the Subject Parcel.

9.  Defendant Rose Harvey is the Commissioner, New York State Office of Parks, Recreation and Historic Preservation ("NYS Parks"), which, as State Liaison Officer, is the entity responsible for compliance and enforcement of post-completion and stewardship of L&WCF projects within the State of New York.

10. Defendant Michael T. Reynolds is the Acting Director of the National Park Service ("NPS"). The L&WCF State Assistance Program is one of the programs under its jurisdiction. The L&WCF State Assistance Program (the "Program") had originally been administered by the Bureau of Outdoor Recreation, thereafter was administered by the Heritage Conservation and Recreation Service, and, since 1981 has been administered by the National Park Service. Responsibility for compliance and enforcement of the Program in the State of New York rests with NYS Parks. However, NPS and Michael T. Reynolds as acting Director of the NPS are interested and necessary parties.

## CONTEXT AND ANALYSIS OF L&WCF

11. The Program was established in 1965 as a grant program to create and maintain outdoor recreation sites. The Program was intended to assist states in the acquisition of properties for recreation in the nation that were on a rapid road to development. The Program provides matching grants to States and, through States to municipalities. *See*, National Park Service, Land and Water Conservation Fund State Assistance Program, Federal Financial Assistance Manual (the "L&WCF Manual") at Preface 2 (2008), *available at* http://www.nps.gov/lwcf/manual/lwcf.pdf.

12. The Program was first administered by the Bureau of Outdoor Recreation through 1978 when the Heritage Conservation and Recreation Services took over, which program was then taken over by the NPS in 1981. The NPS continues to administer the program. Id.

13. New York State bears primary responsibility for administering a L&WCF grant within its borders. Id. at Preface 1.

4

14. Eligibility for assistance under the L&WCF requires the designation of a State Liaison Officer by each state's governor who has the authority to administer Program funds. Id. at Chapter 1-1. In New York, the State Liaison Officer is Rose Harvey, the commissioner of NYS Parks. See http://www.nps.gov/ncrc/programs/lwcf/contact_list.html.

15. The L&WCF requires states to operate and maintain the properties and Section 6(f)(3) of the L&WCF "requires that no property acquired or developed with L&WCF assistance shall be converted to other than public outdoor recreation uses without the approval of the Secretary of the Department of the Interior, and only if he/she finds it to be in accord with the then existing program and only upon such conditions as he/she deems necessary to assure the substitution of other recreation properties of at least equal fair market value and of reasonably equivalent usefulness and location (36 CFR Sect 59)." L&WCF Manual at Chapter 1-3.

16. States receiving L&WCF grant assistance must first create a Section 6(f) boundary map that delineates the area that is protected by the statute's prohibition on conversion to non-outdoor recreational use. Id. at Chapter 6-3. Generally, no changes may be made to the 6(f) boundary map after final reimbursement. Id. at Chapter 6-4.

17. Post-completion compliance responsibilities with regard to projects funded under the L&WCF Program are addressed at 36 C.F.R. §59.1. Significantly:

> post-completion responsibilities apply to each area or facility for which Land and Water Conservation Fund (L&WCF) assistance is obtained, regardless of the extent of participation of the program in the assisted area or facility and consistent with the contractual [sic] agreement between NPS and the State. Responsibility for compliance and enforcement of these provisions rests with the State for both State and locally sponsored projects. The responsibilities cited herein are applicable to the area depicted or otherwise described on the 6(f) (3) boundary map and/or described in other project documentation approved by the Department of the Interior.

18. Moreover 36 C.F.R. § 59.3 (Conversion requirements) provides in pertinent part:

…Section 6(f) (3) of the L&WCF Act is the cornerstone of Federal compliance efforts to ensure that the Federal investments in L&WCF assistance are being maintained in public outdoor recreation use. This section of the Act assures that once an area has been funded with L&WCF assistance, it is continually maintained in public recreation use unless NPS approves substitution property of reasonably equivalent usefulness and location and of at least equal fair market value…. (b) … Requests from the project sponsor for permission to convert L&WCF assisted properties in whole or in part to other than public outdoor recreation uses must be submitted by the State Liaison Officer to the appropriate NPS Regional Director in writing….

19. The L&WCF states, in pertinent part:

No property acquired or developed with assistance under this section shall, without the approval of the Secretary, be converted to other than public outdoor recreation use. The Secretary shall approve a conversion only if the Secretary finds it to be in accordance with the then existing comprehensive statewide outdoor recreation plan and only upon such conditions as the Secretary considers necessary to ensure the substitution of other recreation properties of at least equal fair market value and of reasonably equivalent usefulness and location.

54 U.S.C. § 200305(f) (3).

20. A recognized "trigger" requiring conversion is the conveyance of property "for private use or non-public outdoor recreation uses." Federal Financial Assistance Manual at Chapter 8-4.

21. To the extent "the NPS is alerted or otherwise becomes aware of an ongoing conversion activity that has not been approved, NPS shall request the State Liaison Officer (SLO) to advise the project sponsor of the necessary prerequisites for approval of a conversion and to discontinue the unauthorized conversion activities. If the conversion activity continues, NPS shall formally notify the State it must take appropriate action to preclude the project sponsor from proceeding further with the conversion …." L&WCF Manual at Chapter 8-4.

22. "If it is discovered that an unauthorized conversion is in progress, the State must notify the project sponsor to cease immediately until the conversion process pursuant to 36 CRF Sec. 59.3 has been satisfactorily completed." L&WCF Manual at Chapter 8-11.

23. "Failure by the State to take steps to follow this procedure shall be considered cause for NPS to apply penalty options Id.

24. Section N of the L&WCF manual states that "[p]ursuant to 43 CFR Part 12.83, when the NPS determines a State has violated or failed to comply with applicable federal law … NPS may withhold payment of federal funds to the State on account of such project, withhold funds for other projects of the State, withhold approval of further projects of the State, and take such other action deemed appropriate under the circumstances, including debarment and suspension … until compliance or remedial action has been accomplished by the State to the satisfaction of NPS." Id. at Chapter 8-17 to 18.

25. New York law holds that parkland is inalienable, held in trust for the public, and may not be sold without the express approval of the State Legislature.

26. Land may become a park by implication, such as the continued use of the land as a park.

**FACTUAL BACKGROUND**

27. The Subject Parcel, which is the subject of a Contract of Sale by and between the Town and Upstate, consists of 5.93 acres of land known as 24 Grosser Lane. It is located due west of Route 306 and due south of the Grosser Lane and Timothy Court cul-de-sacs in Monsey, New York. (See Exhibit "A", Map outlining borders of the Subject Property). The hash-tagged area depicted in Image "A" below is a reasonable depiction of the Subject Parcel.

Image "A"



28. On or about May 25, 1970, in connection with the construction of the Monsey Jewish Center, Rubin Josephs, the president of Viola Center, Inc. and the developer of the Monsey Jewish Center, donated by way of dedication, the Subject Parcel to the Town of Ramapo. The agreement pursuant to which such donations were made (the "Dedication Agreement") contained no express provisions that the land be used for park purpose, but it also contained no express provision that the land be used for general municipal purposes. (See Exhibit "B", 5/25/1970 Dedication Agreement).

29.     Thereafter, the Town sought to develop both the Subject Parcel, as well as a larger open area to the west as parkland. The Town, in order to receive federal assistance, made a representation to the State of New York and the United States Department of the Interior, Bureau of Outdoor Recreation that both plots together comprised parkland known as Viola Park.

30.     More specifically, Alexander Aldrich, Commissioner of the New York State Office of Parks, Recreation and Historic Preservation submitted a Project Proposal to the United States Department of Interior dated November 18, 1972 seeking federal assistance on behalf of the Town for the project known as Viola Park. (A copy of said Project Proposal is annexed as Exhibit "C"). Then on January 11, 1973 Mr. Aldrich, as Commissioner entered into a "United States Department of the Interior, Bureau of Outdoor Recreation, Land and Water Conservation Fund Project Agreement" with the Acting Regional Director, Bureau of Outdoor Recreation, United States Department of the Interior, with respect to Project Title "Viola Park", Project Number 36-00236, of which the Town of Ramapo was listed as the Sponsor. (a copy of the "Viola Park Project Agreement", is attached as Exhibit "D").

31.     The scope of the Viola Park Project Agreement included "Development of Viola Park by the Town of Ramapo to include four baseball fields, one football-soccer field, one tot lot, eight tennis courts … hiking trails, site improvements, landscaping, fencing, sewer, water and electric systems … a Land and Water Conservation Fund participation sign (the "Viola Park Project"). The Viola Park Project Agreement's total cost was stated as $467,100.00, with the federal assistance listed as $233,550.00.

32.     The Viola Park Project Agreement includes at page 3 a Location Plan drawing/map which designates the area of Viola Park by way of hash-tags. The Subject Parcel